IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | No. 23-3138-01-CR-S-BP |
| SARAH D. DAWSON, | |
| Defendant. | |

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the parties described below have entered into the following plea agreement:

1. **The Parties.** The parties to this agreement are the United States Attorney's Office for the Western District of Missouri (otherwise referred to as "the Government" or "the United States"), represented by Teresa A. Moore, United States Attorney, and Casey Clark, Assistant United States Attorney, and the defendant, Sarah D. Dawson ("the defendant"), represented by Joseph Passanise.

The defendant understands and agrees that this plea agreement is only between her and the United States Attorney for the Western District of Missouri, and that it does not bind any other federal, state or local prosecution authority or any other government agency, unless otherwise specified in this agreement.

2. **Defendant's Guilty Plea.** The defendant agrees to and hereby does plead guilty to Count 1 of the Information, charging her with a violation of 18 U.S.C. § 1343, that is, wire fraud. The defendant further admits to the Forfeiture Allegation of the Information and agrees to forfeit to the United States the United States currency and property related to Count 1, as described in the

Forfeiture Allegation, including a money judgment in an amount not less than $62,360. By entering into this plea agreement, the defendant admits that she knowingly committed this offense, and is, in fact, guilty of this offense.

3. **Factual Basis for Guilty Plea**. The parties agree that the facts constituting the offense to which the defendant is pleading guilty are as follows:

> Beginning on or about July 9, 2018, and continuing until on or about December 6, 2019, in Greene and Christian Counties, in the Western District of Missouri, and elsewhere, the defendant, Sarah D. Dawson, voluntarily and intentionally devised and executed a scheme and artifice to defraud, and to obtain money and property by means of false and fraudulent pretenses, representations and promises, from Victim Company 1 ("VC 1").
>
> During this time, the defendant, a resident of Christian County, within the Western District of Missouri, was employed as an office manager for VC 1, a Missouri limited liability company, with a principal place of business in Springfield, Greene County, Missouri, also within the Western District of Missouri.
>
> From at least July 1, 2018, through November 30, 2019, the defendant maintained a personal bank account with Great Southern Bank, account number ending 5870. Great Southern Bank was headquartered in Springfield, Missouri.
>
> As a part of her employment, the defendant was responsible for financial and administrative duties and received electronic access to VC 1's practice management software system, topsOrtho. The defendant's duties included, but were not limited to, entering patient financial contracts into topsOrtho, ensuring payments were recorded correctly, making credit adjustments, performing day-end routine business tasks, preparing and making bank deposits, ensuring business funds were deposited at the bank, and reconciling bank statements. As a part of the defendant's regular duties, VC 1 authorized the defendant to electronically enter information into topsOrtho for the tracking of payments made to VC 1 for its dentistry services. The defendant regularly made electronic entries in topsOrtho utilizing the internet at VC 1's place of business in Springfield, Missouri.
>
> topsOrtho was produced, managed, and hosted by a company in the state of Georgia. Any topsOrtho entries conducted by the defendant through her employment with VC 1 in Springfield, Missouri involved electronic communication from the state of Missouri and through a server in the state of Georgia.
>
> VC 1 accepted cash payments for services rendered. VC 1 did not authorize the defendant to take cash from the business for the payment of any wages due to the defendant for her work for the business.

2

Beginning on July 9, 2018, the defendant devised and executed a scheme by which she would make fraudulent entries and void correct entries in topsOrtho related to cash payments made by clients to VC 1 for rendered services, and then take the cash payments and deposit them into her personal bank account at Great Southern Bank, account number ending 5870.

As a part of her scheme, the defendant voided cash payments intended for VC 1 in topsOrtho. In order to conceal her personal use of VC 1 funds, the defendant applied unauthorized credit adjustment codes to client accounts equal to the amount of cash payments that she diverted from the business to her personal bank account. She also entered false transactions in topsOrtho reflecting deposits of cash payments, which had not been deposited, and input false contract fee amounts due from clients, again adjusted for the amount of cash payments she took for her own use. Specifically, the defendant shorted contract amounts entered into topsOrtho by the amount of a cash down payment made by the client.

On June 17, 2019, a client-patient made a $2,500 cash payment to VC 1 for services. The payment was recorded in topsOrtho; however, on that same date, the defendant voided the cash payment. The defendant then deposited $2,000 of that cash payment in her Great Southern Bank account, number ending 5870, on June 17. In order to conceal her theft of that cash payment, the defendant made a false entry into the client's account on topsOrtho.

On August 20, 2019, a client-patient entered into a contract with VC 1 for services, which contained a total fee of $6,680. The client elected to pay a $1,000 down payment, bringing the total owed by the client to VC 1 down to $5,680. On that same date, topsOrtho recorded a $1,000 cash payment made by the client; however, the defendant later voided the payment on the same date. On August 20, the defendant deposited the $1,000 in cash in her Great Southern Bank account, number ending 5870. On August 23, 2019, the defendant entered a total treatment fee, titled "Initial Fee," for the client in topsOrtho of $5,680. The defendant's entries were made at VC 1 in Springfield, Missouri, and were communicated electronically through wire transmission through the internet to the topsOrtho headquarters in the state of Georgia.

On September 17, 2019, a client-patient entered into a contract with VC 1 for services, which contained a total fee of $3,495. The patient elected to pay a $750 down payment, bringing the total owed by the client down to $2,745. On that same date, topsOrtho recorded a $750 cash payment made by the client; however, the defendant voided the payment on the same date. On September 17, the defendant deposited the $750 in cash in her Great Southern Bank account, number ending 5870. On September 18, 2019, the defendant entered a total treatment fee for the client in topsOrtho of $2,745.

On numerous occasions, continuing between July 9, 2018, and December 6, 2019, the defendant made false entries in topsOrtho related to cash payments made by clients, and then took the cash payments for her own personal use and deposited them into her personal

3

bank account, without authorization from her employer. The loss to VC 1 that resulted from the defendant's above-described scheme totaled at least $62,360.

After discovery of the defendant's conduct, and upon her termination, the defendant, for the purpose of further concealing her scheme, sent an email to VC 1 on December 6, 2019, in which she made numerous false statements.

Through the actions described above, and for purposes of the defendant's guilty plea to Count 1 of the Information, the defendant admits that, from on or about July 9, 2018, and continuing until on or about December 6, 2019, in Greene and Christian Counties, in the Western District of Missouri, and elsewhere, she, with the intent to defraud, devised and executed the above-described scheme and artifice to defraud, and to obtain money and property by means of false and fraudulent pretenses, representations and promises, from Victim Company 1.

The defendant also admits that, on or about August 23, 2019, in Greene County, in the Western District of Missouri, and elsewhere, for the purpose of executing or attempting to execute the above-described scheme and artifice to defraud and deprive, and to obtain money by means of false and fraudulent pretenses, representations and promises, she did knowingly transmit and cause to be transmitted in interstate commerce, by means of wire communication, certain signs, signals and sounds, that is the electronic entry of a $5,680.00 "Initial Fee" in Victim Company 1's topsOrtho practice management software system, and such electronic entry originated in Greene County, Missouri, and was relayed to the state of Georgia, and thus traveled across state lines in interstate commerce, all in violation of Title 18, United States Code, Section 1343.

Through the defendant's illegal actions, as described above, at least $62,360 in criminal proceeds were received by the defendant and were the consequence of her illegal actions.

4. **Use of Factual Admissions and Relevant Conduct.** The defendant acknowledges, understands and agrees that the admissions contained in paragraph 3 and other portions of this plea agreement will be used for the purpose of determining her guilt and advisory sentencing range under the United States Sentencing Guidelines ("U.S.S.G."), including the calculation of the defendant's offense level in accordance with U.S.S.G. §1B1.3(a)(2). The defendant acknowledges, understands and agrees that all other uncharged, related criminal activity may be considered as "relevant conduct" pursuant to U.S.S.G. §1B1.3(a)(2) in calculating the offense level for the charge to which she is pleading guilty.

4

5. **Statutory Penalties.** The defendant understands that, upon her plea of guilty to Count 1 of the Information, charging her with wire fraud, the minimum penalty the Court may impose is not less than probation, while the maximum penalty the Court may impose is not more than 20 years' imprisonment, not more than three years' supervised release, not more than a $250,000 fine, an order of restitution, and a $100 mandatory special assessment per felony count of conviction which must be paid in full at the time of sentencing. The defendant further understands that this offense is a Class C felony.

6. **Sentencing Procedures.** The defendant acknowledges, understands and agrees to the following:

    a. in determining the appropriate sentence, the Court will consult and consider the United States Sentencing Guidelines promulgated by the United States Sentencing Commission; these Guidelines, however, are advisory in nature, and the Court may impose a sentence either less than or greater than the defendant's applicable Guidelines range, unless the sentence imposed is "unreasonable;"

    b. the Court will determine the defendant's applicable Sentencing Guidelines range at the time of sentencing;

    c. in addition to a sentence of imprisonment, the Court may impose a term of supervised release of not more than three years as to Count 1 of the Information; and that the Court must impose a period of supervised release if a sentence of imprisonment of more than one year is imposed;

    d. if the defendant violates a condition of her supervised release, the Court may revoke her supervised release and impose an additional period of imprisonment of up to two years as to Count 1 of the Information, without credit for time previously spent on supervised release. In addition to a new term of imprisonment, the Court also may impose a new period of supervised release, the length of which cannot exceed three years as to Count 1, less the term of imprisonment imposed upon revocation of the defendant's first supervised release;

    e. the Court may impose any sentence authorized by law, including a sentence that is outside of, or departs from, the applicable Sentencing Guidelines range;

f. any sentence of imprisonment imposed by the Court will not allow for parole;

g. the Court is not bound by any recommendation regarding the sentence to be imposed or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Office;

h. the defendant may not withdraw her guilty plea solely because of the nature or length of the sentence imposed by the Court;

i. the defendant agrees that the United States may institute civil, judicial, or administrative forfeiture proceedings against all forfeitable assets in which the defendant has an interest, and that she will not contest any such forfeiture proceedings;

j. the defendant agrees to forfeit all interest she owns or over which she exercises control, directly or indirectly, in any asset that is subject to forfeiture to the United States either directly or as substitute for property that was subject to forfeiture but is no longer available for the reasons set forth in 21 U.S.C. § 853(p), including, but not limited to, the following specific property: a money judgment in an amount not less than $62,360. The parties agree that the Government can pursue a money judgment higher than that amount at sentencing. With respect to any asset which the defendant has agreed to forfeit, the defendant waives any constitutional and statutory challenge in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this plea agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment under the Eighth Amendment to the United States Constitution;

k. the defendant agrees to fully and truthfully disclose the existence, nature and location of all assets forfeitable to the United States, either directly or as a substitute asset, in which she has or had any direct or indirect financial interest, or exercise or exercised control, directly or indirectly, during the period of July 2018 to the present. The defendant agrees to fully and completely assist the United States in the recovery and forfeiture of all such forfeitable assets. The defendant also agrees that if she sells or transfers ownership interest in any property under her custody or control between July 2018 and the time of sentencing, the proceeds from that sale will be placed in an escrow account and will be remitted to the victims as restitution. The defendant agrees that her failure to place all process for any such sales into the escrow account, or transfers any assets to the control of another, such action will be considered a breach of the plea agreement and the government will be released from any and all sentencing recommendations; and

l. the defendant agrees to take all necessary steps to comply with the forfeiture matters set forth herein before her sentencing.

7. **Government's Agreements.** Based upon evidence in its possession at this time, the United States Attorney's Office for the Western District of Missouri, as part of this plea agreement, agrees not to bring any additional charges against the defendant for any federal criminal offenses related to her embezzlement from, and defrauding of, Victim Company 1, for which it has venue, and which arose out of the defendant's conduct described above.

The defendant understands that this plea agreement does not foreclose any prosecution for an act of murder or attempted murder, an act or attempted act of physical or sexual violence against the person of another, or a conspiracy to commit any such acts of violence or any criminal activity of which the United States Attorney for the Western District of Missouri has no knowledge.

The defendant recognizes that the United States' agreement to forego prosecution of all of the criminal offenses with which the defendant might be charged is based solely on the promises made by the defendant in this agreement. If the defendant breaches this plea agreement, the United States retains the right to proceed with the original charges and any other criminal violations established by the evidence. The defendant expressly waives her right to challenge the initiation of additional charges against her if she breaches this agreement. The defendant expressly waives her right to assert a statute of limitations defense if the additional charges are initiated against her following a breach of this agreement. The defendant further understands and agrees that, if the Government elects to file additional charges against her following her breach of this plea agreement, she will not be allowed to withdraw her guilty plea.

8. **Preparation of Presentence Report.** The defendant understands the United States will provide to the Court and the United States Probation Office a government version of the offense conduct. This may include information concerning the background, character and conduct of the defendant, including the entirety of her criminal activities. The defendant understands these

disclosures are not limited to the count to which she has pleaded guilty. The United States may respond to comments made or positions taken by the defendant or the defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this plea agreement. The United States and the defendant expressly reserve the right to speak to the Court at the time of sentencing pursuant to Rule 32(i)(4) of the Federal Rules of Criminal Procedure.

9. **Withdrawal of Plea.** Either party reserves the right to withdraw from this plea agreement for any or no reason at any time prior to the entry of the defendant's plea of guilty and its formal acceptance by the Court. In the event of such withdrawal, the parties will be restored to their pre-plea agreement positions to the fullest extent possible. However, after the plea has been formally accepted by the Court, the defendant may withdraw her plea of guilty only if the Court rejects the plea agreement, or if the defendant can show a fair and just reason for requesting the withdrawal. The defendant understands that, if the Court accepts her plea of guilty and this plea agreement but subsequently imposes a sentence that is outside the defendant's applicable Sentencing Guidelines range, or imposes a sentence that the defendant does not expect, like or agree with, she will not be permitted to withdraw her plea of guilty.

10. **Agreed Guidelines Applications.** With respect to the application of the Sentencing Guidelines to this case, the parties stipulate and agree as follows:

   a. The Sentencing Guidelines do not bind the Court and are advisory in nature. The Court may impose a sentence that either is above or below the defendant's applicable Guidelines range, provided the sentence imposed is not "unreasonable;"

b. The applicable Guidelines section for the offense of conviction under Count 1 of the Information is U.S.S.G. §2B1.1, which provides for a base offense level of at least 7;

c. The parties agree that the loss amount for the defendant's actions under Count 1 is at least $62,360, which subjects her to at least a **6-level** enhancement under U.S.S.G §2B1.1(b)(1)(D). The parties further agree that the Government may present evidence at sentencing that shows the loss amount is at least $95,000 and argue that an **8-level** enhancement applies under §2B1.1(b)(1)(E);

d. The parties agree that the defendant is subject to a **2-level** enhancement under U.S.S.G. §3B1.3 because the defendant abused her position of trust with Victim Company 1, in a manner that significantly facilitated the commission and concealment of her offense;

e. The defendant has admitted her guilt and clearly accepted responsibility for her actions, and has assisted authorities in the investigation or prosecution of her own misconduct by timely notifying authorities of her intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Government and the Court to allocate their resources efficiently. Therefore, dependent upon the Court's finding regarding her offense level under the Guidelines, she is either entitled to a **two-level reduction** pursuant to U.S.S.G. §3E1.1(a) or a **three-level reduction** pursuant to §3E1.1(a) and (b). If applicable, the Government, at the time of sentencing, will file a written motion with the Court to that effect, unless the defendant: (1) fails to abide by all of the terms and conditions of this plea agreement and her pretrial release; or (2) attempts to withdraw her guilty plea, violates the law, or otherwise engages in conduct inconsistent with her acceptance of responsibility;

f. There is no agreement between the parties regarding the defendant's criminal history category. The parties agree that the Court will determine her applicable criminal history category after receipt of the presentence investigation report prepared by the United States Probation Office;

g. The defendant understands that the estimate of the parties with respect to the Guidelines computation set forth in the subsections of this paragraph does not bind the Court or the United States Probation Office with respect to the appropriate Guidelines levels. Additionally, the failure of the Court to accept these stipulations will not, as outlined in paragraph 9 of this plea agreement, provide the defendant with a basis to withdraw her plea of guilty;

h. The United States agrees not to seek an upward departure from the Guidelines or a sentence above the Guidelines range. Additionally, the United States agrees not to recommend a sentence higher than the low-end of the applicable

9

Guidelines range. However, although the United States does not believe it is appropriate for the defendant to receive a below-Guidelines sentence, the defendant remains free to seek any lawful sentence, including one that is below her applicable Guidelines range. The agreement by the United States to not seek an upward departure from the Guidelines and to not seek a sentence higher than the low-end of the Guidelines range is not binding upon the Court or the United States Probation Office, and the Court may impose any sentence authorized by law, including any sentence outside the applicable Guidelines range that is not "unreasonable;"

        i.      The defendant consents to judicial fact-finding by a preponderance of the evidence for all issues pertaining to the determination of the defendant's sentence, including the determination of any mandatory minimum sentence (including the facts that support any specific offense characteristic or other enhancement or adjustment), and any legally authorized increase above the normal statutory maximum. The defendant waives any right to a jury determination beyond a reasonable doubt of all facts used to determine and enhance the sentence imposed, and waives any right to have those facts alleged in the information. The defendant also agrees that the Court, in finding the facts relevant to the imposition of sentence, may consider any reliable information, including hearsay; and

        j.      The defendant understands and agrees that the factual admissions contained in paragraph 3 of this plea agreement, and any admissions that she will make during her plea colloquy, support the imposition of the agreed upon Guidelines calculations contained in this agreement.

11.    **<u>Effect of Non-Agreement on Guidelines Applications.</u>** The parties understand, acknowledge and agree that there are no agreements between the parties with respect to any Sentencing Guidelines issues other than those specifically listed in paragraph 10 and its subsections. As to any other Guidelines issues, the parties are free to advocate their respective positions at the sentencing hearing.

12.    **<u>Change in Guidelines Prior to Sentencing.</u>** The defendant agrees that, if any applicable provision of the Guidelines changes after the execution of this plea agreement, then any request by the defendant to be sentenced pursuant to the new Guidelines will make this plea agreement voidable by the United States at its option. If the Government exercises its option to

10

void the plea agreement, the United States may charge, reinstate, or otherwise pursue any and all criminal charges that could have been brought but for this plea agreement.

13. **Government's Reservation of Rights.** The defendant understands that the United States expressly reserves the right in this case to:

    a. oppose or take issue with any position advanced by the defendant at the sentencing hearing which might be inconsistent with the provisions of this plea agreement;

    b. comment on the evidence supporting the charge in the Information;

    c. oppose any arguments and requests for relief the defendant might advance on an appeal from the sentences imposed, and that the United States remains free on appeal or collateral proceedings to defend the legality and propriety of the sentence actually imposed, even if the Court chooses not to follow any recommendation made by the United States; and

    d. oppose any post-conviction motions for reduction of sentence, or other relief.

14. **Waiver of Constitutional Rights.** The defendant, by pleading guilty, acknowledges that she has been advised of, understands, and knowingly and voluntarily waives the following rights:

    a. the right to plead not guilty and to persist in a plea of not guilty;

    b. the right to be presumed innocent until her guilt has been established beyond a reasonable doubt at trial;

    c. the right to a jury trial, and at that trial, the right to the effective assistance of counsel;

    d. the right to confront and cross-examine the witnesses who testify against her;

    e. the right to compel or subpoena witnesses to appear on her behalf; and

    f. the right to remain silent at trial, in which case her silence may not be used against her.

11

The defendant understands that, by pleading guilty, she waives or gives up those rights and that there will be no trial. The defendant further understands that, if she pleads guilty, the Court may ask her questions about the offense to which she pleaded guilty, and if the defendant answers those questions under oath and in the presence of counsel, her answers may later be used against her in a prosecution for perjury or making a false statement. The defendant also understands that she has pleaded guilty to a felony offense and, as a result, will lose her right to possess a firearm or ammunition and might be deprived of other rights, such as the right to vote or register to vote, hold public office, or serve on a jury.

15. **Waiver of Appellate and Post-Conviction Rights.**

   a. The defendant acknowledges, understands and agrees that, by pleading guilty pursuant to this plea agreement, she waives her right to appeal or collaterally attack a finding of guilt following the acceptance of this plea agreement, except on grounds of (1) ineffective assistance of counsel; or (2) prosecutorial misconduct; and

   b. The defendant expressly waives her right to appeal her sentence, directly or collaterally, on any ground except claims of: (1) ineffective assistance of counsel; (2) prosecutorial misconduct; or (3) an illegal sentence. An "illegal sentence" includes a sentence imposed in excess of the statutory maximum, but does *not* include less serious sentencing errors, such as a misapplication of the Sentencing Guidelines, an abuse of discretion, or the imposition of an unreasonable sentence. However, if the United States exercises its right to appeal the sentence imposed as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and may, as part of the Government's appeal, cross-appeal her sentence as authorized by 18 U.S.C. § 3742(a) with respect to any issues that have not been stipulated to or agreed upon in this agreement.

16. **Financial Obligations.** By entering into this plea agreement, the defendant represents that she understands and agrees to the following financial obligations:

   a. The parties agree that the Court must order restitution to the victims of the offense to which the defendant is pleading guilty, pursuant to 18 U.S.C. § 3663A. The parties further agree that the Court may order restitution to any victim of this offense and in connection with all other uncharged related criminal activity, pursuant to 18 U.S.C. § 3663(a). Additionally, pursuant to 18 U.S.C.

12

§ 3663(a)(3), the defendant agrees to pay an amount of at least $70,160 in restitution to the victim of her illegal conduct, Victim Company 1. The parties agree that the Government may present evidence at sentencing showing that the restitution amount due from the defendant to Victim Company 1 is at least $95,000 and request that the Court order such amount to be paid by the defendant.

This restitution includes loss related to the offense to which she is pleading guilty and loss from related criminal activity. The defendant further agrees that the total amount of restitution reflected in this agreement results from the defendant's illegal conduct;

      b.      The defendant agrees to pay restitution as ordered by the Court in any restitution order entered pursuant to this plea agreement, and that such restitution is due and payable immediately after the judgment is entered and is subject to immediate enforcement in full by the United States. If the Court imposes a schedule of payments, the defendant agrees that the schedule of payments is a schedule of the minimum payment due, and that the payment schedule does not prohibit or limit the methods by which the United States may immediately enforce the judgment in full;

      c.      All restitution payments shall be paid by check, shall include this case number in the memo line, and shall be delivered to the Clerk's office or addressed to the Clerk's office at the following address:

> United States District Court Clerk's Office
> Western District of Missouri
> Charles Evans Whitaker Courthouse
> 400 East 9th Street, Room 1510
> Kansas City, Missouri 64106

      d.      The United States may use the Federal Debt Collection Procedures Act and any other remedies provided by law to enforce any restitution order that may be entered as part of the sentence in this case and to collect any fine;

      e.      The defendant will fully and truthfully disclose all assets and property in which she has any interest, or over which the defendant exercises control, directly or indirectly, including assets and property held by a spouse, nominee or other third party. The defendant's disclosure obligations are ongoing, and are in force from the execution of this agreement until the defendant has satisfied the restitution order in full;

      f.      Within ten days of the execution of this plea agreement, at the request of the United States Attorney's Office ("USAO"), the defendant agrees to execute and submit: (1) a Tax Information Authorization form; (2) an Authorization to Release Information; (3) a completed financial disclosure statement; and (4)

copies of financial information that the defendant submits to the United States Probation Office. The defendant understands that compliance with these requests will be taken into account when the United States makes a recommendation to the Court regarding the defendant's acceptance of responsibility;

  g. At the request of the USAO, the defendant agrees to undergo any polygraph examination the United States might choose to administer concerning the identification and recovery of substitute assets and restitution;

  h. The defendant hereby authorizes the USAO to obtain a credit report pertaining to her to assist the USAO in evaluating the defendant's ability to satisfy any financial obligations imposed as part of the sentence;

  i. The defendant understands that a Special Assessment will be imposed as part of the sentence in this case. The defendant promises to pay the Special Assessment of $100 by submitting a satisfactory form of payment to the Clerk of the Court prior to appearing for the sentencing proceeding in this case. The defendant agrees to provide the Clerk's receipt as evidence of her fulfillment of this obligation at the time of sentencing;

  j. The defendant certifies that she has made no transfer of assets or property for the purpose of: (1) evading financial obligations created by this Agreement; (2) evading obligations that may be imposed by the Court; or (3) hindering efforts of the USAO to enforce such financial obligations. Moreover, the defendant promises that she will make no such transfers in the future; and

  k. In the event the United States learns of any misrepresentation in the financial disclosure statement, or of any asset in which the defendant had an interest at the time of this plea agreement that is not disclosed in the financial disclosure statement, and in the event such misrepresentation or nondisclosure changes the estimated net worth of the defendant by ten thousand dollars ($10,000.00) or more, the United States may at its option: (1) choose to be relieved of its obligations under this plea agreement; or (2) let the plea agreement stand, collect the full forfeiture, restitution and fines imposed by any criminal or civil judgment, and also collect 100% (one hundred percent) of the value of any previously undisclosed assets. The defendant agrees not to contest any collection of such assets. In the event the United States opts to be relieved of its obligations under this plea agreement, the defendant's previously entered plea of guilty shall remain in effect and cannot be withdrawn.

17. **Order of Prohibition.** The defendant agrees to stipulate and consent to an order of prohibition from further participation in the conduct of and/or employment involving the

financial or tax affairs of any company or individual throughout the period of her post-release supervision.

18. **Waiver of FOIA Request.** The defendant waives all of her rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

19. **Waiver of Claim for Attorney's Fees.** The defendant waives all of her claims under the Hyde Amendment, 18 U.S.C. § 3006A, for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

20. **Defendant's Breach of Plea Agreement.** If the defendant commits any crimes, violates any conditions of release, or violates any term of this plea agreement between the signing of this plea agreement and the date of sentencing, or fails to appear for sentencing, or if the defendant provides information to the Probation Office or the Court that is intentionally misleading, incomplete or untruthful, or otherwise breaches this plea agreement, the United States will be released from its obligations under this agreement. The defendant, however, will remain bound by the terms of the agreement, and will not be allowed to withdraw her plea of guilty.

The defendant also understands and agrees that, in the event she violates this plea agreement, all statements made by her to law enforcement agents subsequent to the execution of this plea agreement, any testimony given by her before a grand jury or any tribunal, or any leads from such statements or testimony, shall be admissible against her in any and all criminal proceedings. The defendant waives any rights that she might assert under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the

15

Federal Rules of Evidence, or any other federal rule that pertains to the admissibility of any statements made by her subsequent to this plea agreement.

21. **Defendant's Representations.** The defendant acknowledges that she has entered into this plea agreement freely and voluntarily after receiving the effective assistance, advice and approval of counsel. The defendant acknowledges that she is satisfied with the assistance of counsel, and that counsel has fully advised her of her rights and obligations in connection with this plea agreement. The defendant further acknowledges that no threats or promises, other than the promises contained in this plea agreement, have been made by the United States, the Court, her attorneys, or any other party to induce her to enter her plea of guilty.

22. **No Undisclosed Terms.** The United States and the defendant acknowledge and agree that the above stated terms and conditions, together with any written supplemental agreement that might be presented to the Court in camera, constitute the entire plea agreement between the parties, and that any other terms and conditions not expressly set forth in this agreement or any written supplemental agreement do not constitute any part of the parties' agreement and will not be enforceable against either party.

23. **Standard of Interpretation.** The parties agree that, unless the constitutional implications inherent in plea agreements require otherwise, this plea agreement should be interpreted according to general contract principles and the words employed are to be given their normal and ordinary meanings. The parties further agree that, in interpreting this agreement, any

drafting errors or ambiguities are not to be automatically construed against either party, whether or not that party was involved in drafting or modifying this agreement.

Teresa A. Moore
United States Attorney

Dated: 12/6/23    By: _____
Casey Clark
Assistant United States Attorney
Missouri Bar No. 57968

I have consulted with my attorney and fully understand all of my rights with respect to the offense charged in the Information. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines. I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand this plea agreement and I voluntarily agree to it.

Dated: 12/6/2023    _____
Sarah D. Dawson
Defendant

I am Defendant Sarah D. Dawson's attorney. I have fully explained to her, her rights with respect to the offense charged in the Information. Further, I have reviewed with her the provisions of the Sentencing Guidelines that might apply in this case. I have carefully reviewed every part of this plea agreement with her. To my knowledge, Sarah D. Dawson's decision to enter into this plea agreement is an informed and voluntary one.

Dated: 12/6/23    _____
~~Joseph Passanise~~ Taylor Summers
Attorney for Defendant

17